THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| U.S. BANK, N.A., | CASE NO. C19-0074-JCC |
| Plaintiff, | ORDER |
| v. | |
| THE GLOGOWSKI LAW FIRM, PLLC, d/b/a ALLEGIANT LAW GROUP, and KATRINA GLOGOWSKI, | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. No. 84), Defendants' motion for summary judgment (Dkt. No. 88), and Defendants' motion to file an overlength brief (Dkt. No. 82). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motions for summary judgment (Dkt. Nos. 84, 88) and DENIES as moot the motion to file an overlength brief (Dkt. No. 82) for the reasons explained herein.

## I.    BACKGROUND

This is a legal malpractice action. (*See generally* Dkt. No. 36.) U.S. Bank alleges that Katrina Glogowski and the Glogowski Law Firm, PLLC, d/b/a Allegiant Law Group (collectively "Defendants"), breached their professional duties and their agreement with U.S. Bank when they inadequately represented U.S. Bank in foreclosure actions and related matters

regarding properties in Seattle, Washington (the "Erickson property"); Salem, Oregon (the "Patten property"); and Lake Oswego, Oregon (the "Cohen property"). (*Id.*)

Defendants counter they were not paid for services they provided to a U.S. Bank contractor, Asset Foreclosure Services, now known as Peak Foreclosure Services. (*See* Dkt. No. 40 at 12–14.) Defendants argue that because U.S. Bank benefitted from those earlier services, it is liable for Peak Foreclosure's nonpayment. (*See* Dkt. No. 40 at 12–14.) Defendants assert counterclaims for breach of contract, quantum meruit, and unjust enrichment. (*Id.*)

U.S. Bank seeks summary judgment on all claims and Defendants seek summary judgment solely on U.S. Bank's claims. (*See generally* Dkt. Nos. 84, 88.) Defendants also move for leave to file an overlength motion for summary judgment. (Dkt. No. 82).

## II.    DISCUSSION

### A.    Choice of Law

The statutes of limitations for legal malpractice claims in Minnesota, Washington, and Oregon vary substantially, *compare* Minn. Stat. § 541.05 (six years), *with* Wash. Rev. Code § 4.16.080 (three years) and Or. Rev. Stat. § 12.110 (two years). Defendants argue that, to the extent Washington or Oregon's shorter statute of limitations applies to U.S. Bank's malpractice claims, they would be time-barred. (Dkt. Nos. 88 at 10–11, 93 at 7–8.)

Defendants signed U.S. Bank's engagement letter on October 22, 2014. (*See* Dkt. No. 87 at 10–41.) It "govern[s] all services provided to and conducted on behalf of U.S. Bank" and contains a choice-of-law clause indicating that its terms should be "governed by and construed and enforced in accordance with the laws of the State of Minnesota, without regard to its conflict of law principles." (*Id.* at 10, 20.)

This Court, sitting in diversity, applies Washington's choice-of-law rules. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). Those rules provide that the Court must engage in a conflict-of-laws analysis if an actual conflict exists between the laws or interests of Washington and the laws or interests of another state. *Erwin v. Cotter Health*

*Centers*, 167 P.3d 1112, 1120 (Wash. 2007). Except in limited circumstances, if a conflict of law exists and the parties selected the governing law, the Court enforces that agreement. *See McKee v. AT&T Corp.*, 191 P.3d 845, 851 (Wash. 2008). However, this is not the case for "tort claims arising out of the contract." *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1066 (Wash. 1987). Instead, the parties' agreement is a consideration "in the most significant relationship test." *Id.*

Under the most significant relationship test, the Court looks to relevant contacts, such as the place of contracting, the place of performance, and the domicile of the parties. *Mulcahy v. Farmers Ins. Co. of Wash.*, 95 P.3d 313, 317 (Wash. 2004). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Here, the relevant contacts favor the application of Minnesota's statute of limitations. First and most importantly, this is consistent with the engagement letter. (*See* Dkt. No. 87 at 10, 20.) When interpreting an agreement, the Court focuses on "the actual words used." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). The words used in this instance, agreed to by sophisticated parties, provide that Minnesota law would apply. Second, no single jurisdiction has the majority of contacts regarding Defendants' services to U.S. Bank because Defendants provided legal services to U.S. Bank in various states, including Alaska, Oregon, and Washington. (Dkt. No. 85-1 at 9–10.) Third, U.S. Bank is a Minnesota-based corporation—it negotiated its agreement with Defendants for services rendered in Minnesota and incurred its alleged injuries in Minnesota. (*See* Dkt. Nos. 36 at 3, 95 at 4.)

The Court does not find Defendants' argument, that Washington's statute of limitations cannot be overridden by a generic choice-of-law provision requiring the application of Minnesota law, persuasive. (*See* Dkt. No. 97 at 4.) As the Ninth Circuit stated in the case Defendants rely on, the statute of limitations of the desired forum can apply in circumstances where that forum would otherwise be unavailable to a plaintiff. *See In re Sterba*, 852 F.3d 1175, 1178, 1180–81 (9th Cir. 2017). Here, the Minnesota forum would be unavailable to U.S. Bank

because Defendants are citizens of Washington and provide the Court no assurance that they would be subject to a court's personal jurisdiction in Minnesota. (*See* Dkt. No. 36 at 3.) Without this assurance, it would be inequitable for this Court to ignore the parties' clear choice-of-law provision.

Accordingly, the Court finds that Minnesota law applies.

### B.    Defendants' Motion to File an Overlength Brief

Defendants moved for leave to file an overlength motion for summary judgment (Dkt. No. 82) and U.S. Bank asked the Court to strike the overlength portion of Defendants' motion. (*See* Dkt. No. 95 at 13–14.) At issue are six pages within Defendants' motion containing arguments based on Washington law supporting summary judgment on U.S. Bank's breach of contract claims. (*See* Dkt. No. 88 at 24–30.) But, as discussed above, the parties' agreement for legal services contains a clear choice-of-law clause that requires the application of Minnesota law to this dispute. (*See* Dkt. No. 87 at 20.) Therefore, the Court need not address the parties' requests because the pages at issue in Defendants' motion are not relevant in considering the merit of U.S. Bank's breach of contract claims under Minnesota law. Accordingly, Defendants' motion to file an overlength brief (Dkt. No. 82) is DENIED as moot.

### C.    Legal Standard – Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the Court must view the facts and justifiable inferences drawn from them in the light most favorable to the nonmoving party. *Id.* at 255. The Court is therefore prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

ORDER
C19-0074-JCC
PAGE - 4

1    "The moving party bears the initial burden of establishing the absence of a genuine issue

2    of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to

3    carry its initial burden of production, the nonmoving party has no obligation to produce anything,

4    even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*

5    *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving

6    party properly supports its motion, the nonmoving party "must come forward with 'specific facts

7    showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

8    *Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). Ultimately, summary

9    judgment is appropriate against a party who "fails to make a showing sufficient to establish the

10   existence of an element essential to that party's case, and on which that party will bear the

11   burden of proof at trial." *Celotex*, 477 U.S. at 322.

12        **D.      U.S. Bank's Malpractice Claims**

13                  1.      <u>Statute of Limitations</u>

14        As a threshold matter, the Court addresses Defendant's argument that U.S. Bank's claims

15   are barred by Washington's three-year statute of limitations on malpractice claims. (*See* Dkt.

16   Nos. 88 at 10, 93 at 7–8, 97 at 4–9 (citing *Cawdrey v. Hanson Baker Ludlow Drumheller, P.S.*,

17   120 P.3d 605, 608 (Wash. Ct. App. 2005).) As discussed above, *see supra* Part II.A., the Court

18   relies on Minnesota's statute of limitations for U.S. Bank's legal malpractice claim, which is six

19   years. *See* Minn. Stat. § 541.05. Therefore, a six-year statute of limitations applies, and

20   Defendants do not argue that this term would serve as a bar for U.S. Bank's claims. (*See*

21   *generally* Dkt. Nos. 88, 93.)

22        Moreover, even if Washington's statute of limitations were to apply, U.S. Bank presents

23   sufficient evidence suggesting that, in fact, it did not have adequate notice of the nature and

24   scope of its injury from Defendants' actions on these properties until well after U.S. Bank

25   terminated their relationship. (*See* Dkt. No. 95 at 6–7.) In light of Washington's discovery rule,

26   *see Huff v. Roach*, 106 P.3d 268, 269 (Wash. Ct. App. 2005), summary judgment on U.S. Bank's

malpractice claim, based on Washington's statute of limitations, would also be inappropriate.

Accordingly, summary judgment on U.S. Bank's tort-based malpractice claim based on the statute of limitations is DENIED.

2.   Merits

To bring a claim for legal malpractice based on Minnesota law, a plaintiff must establish (1) the existence of an attorney-client relationship, (2) a negligent act or breach of the parties' agreement, (3) that this act or breach was the proximate cause of the plaintiff's injuries, and (4) but for the attorney's conduct, the plaintiff would have been successful in the prosecution or defense of the underlying claim or would have obtained a more favorable result in the underlying transaction. *See Frederick v. Wallerich*, 907 N.W.2d 167, 173 (Minn. 2018); *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006). Defendants challenge U.S. Bank's malpractice claims for each of the three properties at issue, taking exception with whether they breached the relevant standard of care and, if they did, whether that breach was the proximate cause of U.S. Bank's injuries. (*See* Dkt. Nos. 88 at 9–24, 93 at 7–19.) While Minnesota law controls the outcome, the Court looks to local law for the properties at issue to determine an attorney's standard of care. Attorneys practicing in Oregon have a duty of care to "act as a reasonably competent attorney in protective and defending the interests of the client." *Pereira v. Thompson*, 217 P.3d 236, 247 (Or. Ct. App. 2009). Similarly, attorneys practicing in Washington must be "reasonable, careful and prudent" in representing their clients. *Clark Cnty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 324 P.3d 743, 751 (Wash. Ct. App. 2014).

a.   *Patten Property*

Following U.S. Bank's foreclosure sale of the Patten property, which resulted in proceeds exceeding the amount owed to U.S. Bank, U.S. Bank alleges that Defendants improperly pursued an interpleader action on their behalf, failed to serve the prior homeowner during the interpleader action, and disbursed the excess funds to an ineligible party. (Dkt. No. 36 at 4, 10–11.) U.S.

1   Bank argues each represents a violation of the relevant standard of care and that the $14,070.21

2   in legal fees and $2,000 settlement payment it incurred to resolve a resulting claim brought by

3   the prior homeowner was proximately caused by Defendants' negligence. (Dkt. No. 87 at 4.)

4        Defendants admit that they incorrectly captioned the interpleader action to include U.S.

5   Bank as a party. (*See* Dkt. Nos. 88 at 19, 93 at 8–9; *see also* Dkt. No. 85-1 at 46–47 (deposition

6   testimony from Defendant Katrina Glogowski describing the caption as "honestly . . . an error.")

7   They also admit they should have served the former homeowner in the interpleader action. (*See*

8   Dkt. No. 85-1 at 54 (deposition testimony from Defendant Katrina Glogowski admitting that it

9   would have been "best practice to serve [the homeowner].").) But they dispute that this error

10  proximately caused U.S. Bank's injuries, since it decided to "voluntarily settle the case for a

11  nominal amount." (Dkt. No. 88 at 19.) Reason dictates that these errors were a but-for cause of

12  U.S. Bank's injuries. They were also, as a matter of law, a proximate cause, irrespective of

13  whether the distribution of funds to the third party was consistent with Oregon law; U.S. Bank

14  should not be penalized for attempting to mitigate its injury from Defendants' actions. *See First

15  Bank of Minn. v. Olson*, 557 N.W.2d 621, 624 (Minn. App. 1997) (suggesting such a rule would

16  "discourage settlement").

17       Accordingly, summary judgment is GRANTED to U.S. Bank on its malpractice claims

18  relating to the Patten property.

19                           b.      *Cohen Property*

20       U.S. Bank alleges that Defendants failed to serve necessary parties in a foreclosure

21  proceeding of the Cohen property, namely, the heirs and estate of the decedent whose property

22  U.S. Bank sought to foreclose on. (Dkt. No. 36 at 4–5, 11–12.) U.S. Bank alleges that, as a

23  result, it had to pay $54,284.16 in fees and costs to the revocable trust that held title to the

24  property. (*Id.* at 12.) It is undisputed that U.S. Bank lost on the issue at trial, that Defendants

25  believe the court committed reversible error in finding that the estate was a necessary party, and

26  that U.S. Bank elected not to appeal the ruling. (*See* Dkt. Nos. 84 at 14, 88 at 19–23, 93 at 15–16,

1   95 at 13.) Whether this constitutes actionable malpractice, though, is a function of whether

2   Defendants' actions fell below professional norms, irrespective of the trial outcome and, if so,

3   whether the trial outcome would have been more favorable absent the deficient performance. *See*

4   *Frederick*, 907 N.W.2d at 173.

5   U.S. Bank presents uncontroverted evidence that Defendants were warned by the Circuit

6   Court of Oregon that it viewed the estate as a necessary party and believed Defendants should

7   have petitioned for the appointment of a personal representative for the estate, yet Defendants

8   never cured this deficiency. (*See* Dkt. No. 85-1 at 284.) Nevertheless, Defendants insist they had

9   a "colorable argument that the estate was not only unnecessary to the litigation, but also an

10  improper party." (Dkt. No. 93 at 16.) Specifically, they argue that the property passed directly to

11  the revocable trust upon the grantor's death, such that the estate had no interest in the property

12  and, therefore, there was no need to name the estate in the foreclosure proceeding. (Dkt. Nos. 88

13  at 22, 93 at 16 (citing Or. Rev. Stat. § 130.001 *et seq.*; *Windle v. Flinn*, 251 P.2d 136, 146 (Or.

14  1952)).) Further, the parties present dueling expert reports on whether Defendants' actions in the

15  Cohen matter fell below the standard for a reasonable attorney practicing in Oregon. (*Compare*

16  Dkt. No. 86 at 16–20, *with* 90-1 at 140–43.) This is sufficient to establish a disputed issue of

17  material fact. A lawyer does not breach a duty of care simply by asserting a colorable but

18  unsuccessful argument. *See Rowlett v. Fagan*, 369 P.3d 1132, 1141 (Or. 2016).

19  Accordingly, summary judgment is DENIED to both parties on U.S. Bank's malpractice

20  claims relating to the Cohen property.

21              c.    *Erickson Property*

22  Finally, U.S. Bank alleges Defendants did not provide appropriate legal advice or take

23  necessary actions to perfect U.S. Bank's title to the Erickson property after U.S. Bank, with the

24  assistance of separate counsel, Bishop, Marshall & Weibel ("BMW"), redeemed the property in a

25  foreclosure sale. (Dkt. No. 36 at 3–4.) This allowed a third party to obtain title to the property

26  through the property condominium owner association's ("COA") subsequent foreclosure sale,

requiring U.S Bank to pay the third party $356,276 to reacquire title. (*Id.* at 6–10.) Primarily at issue is whether Defendants' undisputed failure to seek a sheriff's deed on the property after they inherited the file from BMW and their alleged failure to communicate the status of the file to U.S. Bank was a breach of their professional duties to U.S. Bank. (*See* Dkt. Nos. 84 at 15–17, 88 at 10–15, 93 at 16–19.) Defendants present sufficient evidence to establish genuine factual disputes regarding (a) the nature of their duties on the file, in light of BMW's earlier representation regarding the property and (b) the role that BMW and U.S. Bank's alleged failure to respond Defendants' requests for information may have played in Defendants' alleged failure to meet their professional obligations. (*See* Dkt. Nos. 90 at 2, 90-1 at 5, 8–12, 29–30.) Moreover, there are also disputed facts regarding causation. It is undisputed that U.S. Bank failed to pay the COA fees; failed to notify Defendants that it had been served in the COA's foreclosure action, which led to the third party acquiring title; and failed to mitigate its injury on the Erickson property by seeking a sheriff's deed following Defendants' termination. (*See* Dkt. No. 90-1 at 22, 34.)

Accordingly, summary judgment is DENIED to both parties on U.S. Bank's malpractice claims relating to the Erickson property.

### E.   U.S. Bank's Breach of Contract Claims

According to Minnesota law, "[a] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc. v. Ill. Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). To establish breach, a plaintiff must prove "(1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. App. 2008).

U.S. Bank argues that Defendants breached their contract by allegedly failing to comply with the following provisions in the parties' engagement letter: (1) an articulation of U.S. Bank's

reliance on Defendant's professionalism;[1] (2) timeliness, notification, and other obligations regarding the handling of third-party funds; and (3) a duty to indemnify. (*See* Dkt. No. 36 at 15; *see also* Dkt. No. 84 at 19–21 (citing Dkt. No. 87 at 10, 12–14, 22, 25).) The parties seek summary judgment on U.S. Bank's claims flowing from these provisions. (*See* Dkt. Nos. 84 at 18–21, 88 at 27–29.) For the reasons described below, summary judgment is GRANTED to Defendants on U.S. Bank's breach of contract claims.

### 1.   Reliance

U.S. Bank first argues that Defendants breached the language in the engagement letter describing U.S. Bank's reliance on their professional competencies. (*See* Dkt. No. 84 at 19.) But this language is not a "promise." *Lyon Fin. Servs., Inc.*, 848 N.W.2d at 543. It is an articulation of U.S. Bank's reliance on the professional standards Defendants were subject to during their engagement. This cannot form the basis of a breach of contract claim.

### 2.   Timeliness, Notification, and Handling of Third-Party Funds

U.S. Bank next argues that Defendants violated the engagement letter's provisions regarding timeliness, handling of third-party funds, and Defendants' obligation to notify U.S. Bank of adverse actions. (Dkt. No. 84 at 19–21.)[2] These allegations are more appropriately used

---

[1] Specifically, the engagement letter contains the following language in its introductory section, *i.e.*, prior to the articulation of terms with separate headings:

> U.S. Bank relies on [Defendants'] professional competencies and obligations, ethical standards, and judgment to ensure that [Defendant's services] are handled appropriately and that [Defendants] take[] all steps necessary to protect U.S. Bank's reputation and interests during the course of providing the Legal Services].

(Dkt. No. 87 at 10.)

[2] U.S. Bank relies on the following terms:

> [Defendants] shall commence and complete the Legal Services in a timely manner . . . [Defendants] shall keep U.S. Bank apprised of the timing and status of the Legal Services, and shall promptly notify U.S. Bank if at any time it appears that the Legal Services will be subject to significant unanticipated delays.

> Third-Party Funds – The Firm shall comply with U.S. Bank's instructions for the

to support U.S. Bank's tort-based legal malpractice claims. Under Minnesota law, the attorney-client relationship can be established under "a 'contract theory' and a 'tort theory.'" *Veit v. Anderson*, 428 N.W.2d 429, 431 (Minn. Ct. App. 1988); *see Christy v. Saliterman*, 179 N.W.2d 288, 293 (Minn. 1970) (in an action brought against attorney for breach of contract the plaintiff must prove the existence of an attorney-client relationship.) Defendants' contractual obligations regarding the timeliness, notification, and handling of third-party funds are consistent with the professional standards established by the relevant governing bodies in Oregon and Washington. (*See* Dkt. Nos. 86 at 11–28, 90-1 at 143–45 (articulation of Oregon and Washington's professional standards by the parties' experts).) To the extent that Defendants failed to fulfill these obligations, the appropriate claim is a tort-based legal malpractice claim; not breach of contract. *See Lyon Fin. Servs., Inc.*, 848 N.W.2d at 544 (discussing the inappropriate use of "[e]ngrafting an element of reliance from tort law onto a breach of contract action" which "blurs the distinction between the two theories of recovery.")

        3.    Indemnification

U.S. Bank finally argues that Defendants violated the engagement letter's indemnification provision by failing to reimburse it for its damages resulting from Defendants' allegedly deficient legal services. (Dkt. No. 84 at 21.)[3] But U.S. Bank did not make this

---

> transmission to U.S. Bank of funds paid by third-parties, such as purchase funds or redemption funds from a junior lienholder.
>
> In the event there is a claim asserted or legal action brought against U.S. Bank that creates exposure to U.S. Bank, the Firm shall promptly notify U.S. Bank. . . . If at any time the Firm encounters or learns of any delays, adverse actions, or other matters in connection with or involving a foreclosure . . . file that could create a risk of regulatory, legal, reputational, or other risk to U.S. Bank, the Firm shall promptly notify the U.S. Bank Law Division contact . . .

(Dkt. No. 87 at 12, 22, 25.)

[3] At issue is the following language: "[Defendants] agree[] to defend, indemnify and hold U.S. Bank harmless from and against all claims, liabilities, obligations, demands, action costs and expenses . . . relating to or resulting from [Defendants'] negligence or willful misconduct." (Dkt. No. 87 at 13.)

1   allegation in its Amended Complaint, (*see generally* Dkt. No. 36), and U.S. Bank cannot raise it

2   for the first time in a motion for summary judgment, as this "makes it difficult, if not impossible"

3   to "know how to defend" such a claim. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th

4   Cir. 2000).

5       For the reasons described above, summary judgment is GRANTED to Defendants on

6   U.S. Bank's breach of contract claims.

7       **F.      Defendants' Counterclaims**

8       U.S. Bank also moves for summary judgment on Defendants' counterclaims. (*See* Dkt.

9   No. 84 at 21–24.) In response, Defendants present no evidence to support their counterclaims for

10  breach of contract, nor would the Court expect that they could, since the parties seem to agree

11  that U.S. Bank did not contract directly with Defendants before their October 2014 engagement

12  letter. (*See* Dkt. No. 87 at 10–41.) And Defendants concede U.S. Bank paid the bills that

13  Defendants issued for services rendered pursuant to that letter. (*See* Dkt. No. 85-1 at 11–12.) Nor

14  do they provide sufficient disputed facts or legal argument to support their quantum meruit and

15  unjust enrichment claims. (*See generally* Dkt. No. 93 at 23.)

16      Accordingly, summary judgment is GRANTED to U.S. Bank on Defendants'

17  counterclaims.

18  **III.    CONCLUSION**

19      For the foregoing reasons, U.S. Bank's motion for summary judgment (Dkt. No. 84) is

20  GRANTED in part and DENIED in part; summary judgment is GRANTED to U.S. Bank on

21  Defendants counterclaims, which are DISMISSED with prejudice, and on U.S. Bank's

22  malpractice claim solely related to the Patten property. Defendant's motion for summary

23  judgment (Dkt. No. 88) is GRANTED in part and DENIED in part; summary judgment is

24  GRANTED to Defendants on U.S. Bank's breach of contract claims, which are DISMISSED

25  with prejudice. Defendants' motion for leave to file an overlength brief (Dkt. No. 82) is DENIED

26

as moot.

DATED this 3rd day of August 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE